**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

ADVANTAGE ENERGY MARKETING, INC.,

               Plaintiff,

v.                                     CIVIL  ACTION  NO. 2:04-0871

COLUMBIA GAS TRANSMISSION
CORPORATION, et al.,

               Defendants.


1564 EAST LANCASTER AVENUE
BUSINESS TRUST,

               Plaintiff,

v.                                     CIVIL  ACTION  NO. 2:04-0872

COLUMBIA GAS TRANSMISSION
CORPORATION, et al.,

               Defendants.


**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendants' Motion for Summary Judgment on Claims of

Plaintiffs 1564 East Lancaster Business Trust and Advantage Energy, Inc. (2:04-cv-871, doc. 156;

2:04-cv-872, doc. 155).  For the following reasons, the Court **GRANTS in part** and **DENIES in**

**part** these motions.  The Court also **DIRECTS** the parties to file supplemental briefings as

discussed herein.

## I. FACTS

On August 19, 2008, the Court denied Plaintiffs' renewed motion for class certification.  In that order, the Court discussed the underlying facts of this case in considerable detail.  Accordingly, the Court will not repeat those facts here.  Rather, the Court adopts and refers to the factual summary as laid forth in the August 19 Order.  Additional facts, as necessary, will appear in the discussion section of this opinion.

## II. SUMMARY JUDGMENT STANDARD

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  *Fed. R. Civ. P.* 56(c).  In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor."  *Anderson*, 477 U.S. at 256.  Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The nonmoving

party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

### III. DISCUSSION

Defendants offer four grounds in support of their motion.  First, they contend that summary judgment is proper as to Plaintiff Advantage Energy Marketing, Inc. ("Advantage") because it "never transacted business with [Defendant] Columbia Gas Transmission Corporation ('TCO')." Next, they maintain that summary judgment is proper as to both Plaintiffs because "both entities were essentially shells of Gaslantic Corporation, whose claims . . . were assigned to a third party. Lastly, they argue that Plaintiffs' antitrust and unjust enrichment claims are barred by the applicable statutes of limitations.

### A. Plaintiff Advantage and Business with TCO or on the TCO System

Plaintiff Advantage was in a joint venture with Alliance Energy, and Defendants were aware of this fact. *Defendants' Reply*, at p. 2.  Taking this fact in the light most favorable to Plaintiff Advantage, and drawing all permissible inferences, the Court believes that summary judgment is inappropriate. However, Plaintiff Advantage cannot continue to rely on its apparent legal theory that because joint venturers share liability they necessarily share benefits and rights.  At trial, Plaintiffs will have to demonstrate facts and legal authority sufficient to maintain its claim.

**B. Whether Plaintiffs Were Shells of Gaslantic Corporation**

Defendants claim that Plaintiffs were "shells" of Gaslantic Corporation and that "both entities lacked any existence separate and apart from Gaslantic." *Defendants' Memorandum in Support,* at p. 4. Defendants claim Gaslantic was sold to PEPCO Services, Inc. ("PEPCO") in September 1998, and they maintain that any claims held by Plaintiffs have been transferred to PEPCO. *Id.* at p. 3. Thus they argue summary judgment is appropriate as to all of Plaintiffs' claims.

Defendants proffer five reasons in support of their view that "Plaintiffs were no more than appendages to Gaslantic." *Id.* First, they claim that Plaintiffs "were proprietary entities owned and controlled by John Cory," *Id.*, who also owned and controlled Gaslantic, his "primary business vehicle." *Defendants' Reply*, at p. 2. Second, Defendants argue that Plaintiffs "operated using Gaslantic's transportation contacts, Gaslantic's customer base, and Gaslantic's support staff." *Defendants' Memorandum in Support,* at p. 3. Third, they contend that "all revenue earned [by Plaintiffs] went directly to Gaslantic. *Id.* Fourth, they maintain that both "ceased active operations when Gaslantic was sold." *Id.* Finally, they allege that Plaintiffs' transfer of their business records to PEPCO reflects the fact that Plaintiffs also have transferred to PEPCO the rights to their claims. *Id.* at p. 4.

Defendants appear to be correct in their contention that Mr. Cory held a controlling stake in Plaintiffs and Gaslantic during the period of the alleged scheme. *See Plaintiffs' Response,* at Ex. 1, p. 2-3. However, the Court fails to see the relevance of this situation. Mr. Cory's controlling stake in these entities, without more, does nothing to indicate that some were shells of the others, and as discussed below, there is not substantially more. Consequently, despite the fact that Plaintiffs

have not produced evidence to contradict Defendants' contention, Defendants' "success" on this point avails them little.

It is also not clear that Defendants would establish that Plaintiffs' claims have passed to PEPCO were Defendants to prevail on their remaining points.  In any event, at a minimum Plaintiffs present sufficient evidence to raise a genuine issue of material fact as whether they remain the owners of their claims against Defendants.  Defendants claim that Plaintiffs' use of Gaslantic's transportation contracts, customer base, and support staff reflect the fact that Plaintiffs were mere shells of Gaslantic.  However, in his declaration, Mr. Cory states that Plaintiff 1564 East Lancaster Avenue Business Trust ("1564") used its own TCO contracts "to move its natural gas supplies closer . . . to [its] markets." *Plaintiffs' Response*, at Ex. 1, p. 5.  Mr. Cory acknowledges that Plaintiff Advantage relied upon some of Gaslantic's TCO contracts, but he also states that it relied upon the TCO contracts of its joint venture partner, Alliance Energy, as well as the contracts of Alliance Energy's own, separate joint venture partners. *Id.* at Ex. 1, p. 1-2.  Moreover, Mr. Cory explains that use of others' contracts was only to continue "until the Advantage/Alliance joint venture initiated its own TCO transportation contracts." *Id.* at Ex. 1, p. 2.

Defendants may be correct in that Plaintiff Advantage "operated using . . . Gaslantic's customer base," *Defendants' Memorandum in Support,* at p. 3, but only in the sense that "Gaslantic contracted with the Advantage/Alliance joint venture to supply merchant natural gas services to [Gaslantic's large end user] clients." *Plaintiffs' Response*, at Ex. 1, p. 1.  "The Advantage/Alliance parties formed the joint venture to provide wholesale and retail natural gas merchant services to large end users." *Id.*  Gaslantic seems to have operated as a sort of "middleman" in this

arrangement, but this fact hardly makes Plaintiff Advantage its shell.[1]  At a minimum, Plaintiffs raise

a disputed factual issue regarding the nature of the arrangement.

It appears that Plaintiffs used Gaslantic's support staff, but they offer an explanation and

other evidence that calls into question the idea that this fact suggests they were shells of Gaslantic.

> From an operational point of view, until Advantage [and 1564] reached a critical mass that required its own stand-alone systems, Advantage [and 1564] ran [their] merchant transactions through Gaslantic rather than uneconomically duplicating the trading desk, back office, and financial systems before it become necessary to do so.

*Id.* at Ex. 1, p. 4-5.  According to Plaintiffs, "[t]he only reason [they] did not reach that point is the

illegal scheme of the . . . defendants."  *Id.* at p. 3 n.2; Ex. 1, p. 7.  Furthermore, it bears noting that

both Plaintiffs had their own sales staff, even if their support staff was the same as Gaslantic's.  *Id.*

at Ex. 1, p. 4-5.  Thus Plaintiffs have raised an issue of material fact concerning their staffing.

Defendants claim that the revenue from each Plaintiff's joint venture was remitted "directly

to Gaslantic," but Plaintiffs offer evidence that contradicts this claim.  *Defendants' Memorandum*

*in Support*, at p. 3.  In his declaration, Mr. Cory states that Plaintiffs each "had to share the profits

[from each's joint venture] with different joint venture principals."  *Plaintiffs' Response*, at Ex. 1,

p. 5.  In the case of Plaintiff 1564, "Gaslantic retained the balance of the gross revenue to cover the

cost of supporting 1564's operational costs until the amount collected exceeded the costs, at which

---

[1]It is not clear whether Defendants also claim that Plaintiff 1564 relied on Gaslantic's customer base.  In their discussion of why they believe Plaintiff Advantage is a shell of Gaslantic, they state: "Like 1564 East Lancaster, Advantage Energy Marketing operated using . . . Gaslantic's customer base." *Defendants' Memorandum in Support,* at p. 3.  However, all of the material cited in support of this proposition concerns Plaintiff *Advantage's* alleged use of Gaslantic's customer base.  Moreover, in Defendants' immediately preceding discussion of why they believe Plaintiff 1564 is a shell of Gaslantic, they do not claim that Plaintiff 1564 used Gaslantic's customer base.

time the balance above costs would have been remitted to 1564."[2]  *Id.* at Ex. 1, p. 6.  Again, both

Plaintiffs claim that "[t]he only reason [they] did not reach the level of business that would have

made a more permanent accounting solution economical is the damage defendants caused to [them]

with their illegal scheme."  *Id.* at Ex. 1, p. 6-7.  This disputed matter is best left to the jury.

Defendants argue that Plaintiffs ceased to operate when Gaslantic was sold to PEPCO, but

Plaintiffs flatly deny this claim.  While they concede that Plaintiffs' separate joint ventures each

ended at approximately the time that Gaslantic was sold to PEPCO, they maintain that Plaintiffs

themselves are in fact "still operating."  *Id.* at p. 7.  Again, a jury should resolve this factual dispute.

Finally, Defendants claim that "all of [Plaintiffs'] records (meager as they were) were

transferred to PEPCO as part of the Gaslantic transaction," and that this alleged fact reflects the

"interrelationship" of Plaintiffs and Gaslantic.  *Defendants' Memorandum in Support*, at p. 4.

Plaintiffs' respond that they "left their operational records at PEPCO by mistake."  *Plaintiff's*

*Response,* at p. 7.  The Court reiterates that it will not "weigh the evidence and determine the truth

of the matter."  *Anderson*, 477 U.S. at 249.  This matter is also for the jury to resolve.  Plaintiffs have

raised genuine issues of material fact as to whether they were shells of Gaslantic.  Summary

judgment as to Plaintiffs' claims should be denied.


## C. Antitrust Claims and the Applicable Statute of Limitations

Plaintiffs' federal and West Virginia antitrust claims are subject to four-year statutes of

limitations.  15 U.S.C. § 15b; W. Va. Code § 47-18-11.  Both statutes run from the point that the

---

[2]This claim has not been explicitly made on behalf of Plaintiff Advantage.  However, the Court notes that Plaintiff Advantage had a similar operational structure to that of Plaintiff 1564, with Gaslantic supplying its support staff.

cause of action accrued.  15 U.S.C. § 15b; W. Va. Code § 47-18-11.  Plaintiffs claim that they "both

were driven out of the [TCO service area] by the illegal scheme," Plaintiff 1564 in "about the

summer of 1998" and Plaintiff Advantage no later than March 1999.  *Plaintiffs' Response*, at Ex.

1, p. 7.  Plaintiffs filed their antitrust claims on July 14, 2004, clearly outside of the statutes of

limitations.  Accordingly, it is incumbent upon Plaintiffs to demonstrate to the Court that some

exception applies to the normal calculation of the applicable statutes of limitations.

      Plaintiffs argue that their state claims are not time-barred because the West Virginia "savings

statute" provides:

> For a period of one year from the date of an order dismissing an
> action or reversing a judgment, a party may re-file the action if the
> initial pleading was timely filed and (i) the action was involuntarily
> dismissed for any reason not based upon the merits of the action or
> (ii) the judgment was reversed on a ground which does not preclude
> a filing of new action for the same cause.

W. Va. Code § 55-2-18.  As a threshold matter, Plaintiffs' argument fails because neither has

previously filed the instant claims.  Thus it is impossible for them to "re-file the action."  *Id.*

Apparently, Defendants seek to invoke the savings statute on the basis of claims filed by AtlantiGas,

an entity that came into being as a result of the sale of Gaslantic to PEPCO.  This course, however,

cannot be permitted by the Court.  Furthermore, the Court concurs with Defendants that Plaintiffs'

position regarding its relationship to Gaslantic appears inconsistent.  On one hand, Plaintiffs argue

they are distinct entities from Gaslantic.  On the other, they claim that they can invoke West

Virginia's savings statute because of a claim filed by Gaslantic or, more correctly, a portion of

Gaslantic that survived the sale to PEPCO, albeit with a new name.  This inconsistency only serves

to bolster the Court's confidence in its decision.

Plaintiffs further state, in a conclusive fashion and without any explanation, that "the 'continuing tort' rule also applies here and warrants rejection of the . . . defendants' motion." *Plaintiffs' Response*, at p. 4-5.  The Court reiterates that the applicable statutes of limitations bar Plaintiffs' claims, unless Plaintiffs can demonstrate otherwise to the Court.  Plaintiffs' one-sentence contention that the continuing tort rule saves their claims is far from sufficient.  The continuing tort rule states: "Where a tort involves a continuing or repeated injury, the cause of action accrues at and the statute of limitations begins to run from the date of the last injury or when the tortious overt acts or omissions cease."  *Graham v. Beverage, P.C.,* 566 S.E.2d 603, *Syl.* Pt. 11 (W. Va. 2002). However, as the Court observed above, it appears neither Plaintiff conducted any business in the TCO service area after March 1999, at the latest.  Defendants are correct, therefore, when they note that "no tort could have been committed against [Plaintiffs] thereafter." *Defendants' Memorandum in Support,* at p. 4.  Accordingly, the continuing tort rule affords Plaintiff no relief.

Finally, Plaintiffs may seek relief in some form of equitable tolling, perhaps the discovery rule, although they do not do so by name.  Defendants claim that Plaintiffs knew of the alleged illegal activity in the fall of 1998 after a senior Gaslantic/PEPCO employee, Julia Bodamer, "overheard discussions that led her to believe that TCO was engaging in special transactions with some shippers."  *Id.* at p. 5.  According to Defendants, Ms. Bodamer shared her concerns with PEPCO management, as well as Mr. Cory, who "went so far as to consult expert outside counsel in Washington about whether he had claims that he could assert against TCO.  *Id.*  Plaintiffs contest this characterization of events, claiming that Ms. Bodamer merely heard rumors and in fact had very little information about the alleged transactions.  *Plaintiffs' Response*, at p. 5.  Plaintiffs

acknowledge Mr. Cory consulted with counsel, but they state that he was told that he lacked enough information to maintain a claim. *Id.*

Although Plaintiffs lay out their version of these events in some detail, they fail to offer the Court a legal theory under which to evaluate them. They do not explain why these facts, if true, would entitle them to escape the applicable statutes of limitations. They cite no caselaw or other authority. For this reason, the Court directs the parties, beginning with Plaintiffs, to file short supplemental briefings addressing the legal relevance, if any, of the circumstances surrounding Plaintiffs' alleged knowledge or suspicion, or lack thereof, of the illegal scheme. Plaintiffs shall have fourteen days to file a supplemental response. Defendants shall reply within seven days.

**D. Unjust Enrichment Claim and the Applicable Statute of Limitations**

A five-year statute of limitations applies to quasi-contractual claims. W. Va. Code § 55-2-6. As stated, Plaintiffs first filed this action on July 14, 2004. Also as stated, Plaintiffs ceased doing business on the TCO system no later than March of 1999. This fact would seem to place them at least approximately four months beyond the statute of limitations. Nonetheless, Plaintiffs claim that "the TCO defendants' illegal schemes and wrongful acts continued for many years [after this time], well within the limitation period," and that on this basis, they may still maintain their claims. *Plaintiff's Response*, at p. 6. Plaintiffs cite no authority in support of this novel legal theory. In fact, under Plaintiffs' logic, the statute of limitations on an unjust enrichment claim would never run, provided that the defendant(s) continued to engage in unjust and enriching acts against someone. In other words, because Defendants were unjustly enriched at Plaintiffs' expense, Plaintiffs can bring suit indefinitely in the future, provided that Defendants continued to be unjustly enriched at

someone's–*anyone's*–expense, even if that party is neither Plaintiff.  Such is clearly not the case.

Rather, the Court agrees with Defendants: "[A]ny [unjust enrichment] claim accrued on the date that

the act conferring the unjust benefit was committed."  *Defendants' Reply,* at p. 4.  Plaintiffs must

find some other means around the statute of limitations.

Unfortunately for Plaintiffs, all of their attempts other attempts to escape the statute of

limitations also fail.  Plaintiffs argue that the discovery rule permits the otherwise late filing of their

claim, but as this Court has held, "the discovery rule does not apply to Plaintiffs' unjust enrichment

claim[s]."  *Court's Order of January 20, 2006,* at p. 4.  Plaintiffs again invoke the continuing tort

rule, but this rule fails for the reason stated above: Defendants' last tortious acts occurred outside

of the applicable statute of limitations.  Finally, Plaintiffs raise an equity argument, maintaining that

"granting summary judgment on the unjust enrichment claim based on a five year limitation statute

would reward the . . . defendants for their wrongful acts in putting 1564 and Advantage out of

business."  *Plaintiff's Response*, at p. 67.  This argument misses the mark.  Even if Defendants

wrongfully put Plaintiffs out of business, Plaintiffs still had five years to bring their claim.  They did

not.  Their claims are now time-barred, and summary judgment should be granted.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** Defendants'

Motions for Summary Judgment on Claims of Plaintiffs 1564 East Lancaster Business Trust and

Advantage Energy, Inc. (2:04-cv-871, doc. 156; 2:04-cv-872, doc. 155).  The Court also **DIRECTS**

the parties to file supplemental briefings as discussed herein.

The Court **DIRECTS** the Clerk to send a copy of this written Order and Opinion to counsel

of record and any unrepresented parties.

ENTER: March 17, 2009

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE